COULL *v.* PIATT.

1. SPECIFIC PERFORMANCE—CONTRACT TO LEAVE PROPERTY BY WILL—
   EVIDENCE.
   More than an expression of intent to make a will must be shown
   in order to entitle a claimed beneficiary to specific performance
   of an alleged contract by deceased to leave property by will.

2. SAME—CONTRACT TO LEAVE PROPERTY BY WILL—CONSIDERATION—
   EVIDENCE.
   Evidence presented in nurse's suit for specific performance of
   doctor's agreement to leave her combination office and apart-
   ment building by will *held,* sufficient to show consideration and
   the agreement.

3. ACTION—SPLITTING CAUSE OF ACTION—COMPLETENESS OF REM-
   EDY.
   The rule against splitting of a cause of action does not pre-
   clude the bringing of more than 1 action, where complete
   remedy could not be obtained in each suit.

4. SAME—EQUITY.
   The rule against splitting a cause of action is not a hard and
   fast one in courts of equity, and will not be enforced there
   unless justice requires its application in the particular case.

5. ELECTION OF REMEDIES—FILING CLAIM AGAINST ESTATE OF DE-
   CEDENT—SPECIFIC PERFORMANCE.
   Plaintiff nurse who had first filed a claim against estate of
   doctor for services rendered during last few months of his

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 6, 8] 57 Am Jur, Wills §§ 185, 186.
[3, 4] 1 Am Jur, Actions § 97.
[5] 57 Am Jur, Wills § 191.
[5] Remedies for breach of decedent's agreement to devise, be-
    queath, or leave property as compensation for services.   69
    ALR 14; 106 ALR 742.
[7] 57 Am Jur, Wills § 198.
[9] 14 Am Jur, Costs § 92.

life did not thereby make an election of remedies so as to bar a suit for specific performance of alleged agreement by doctor to leave plaintiff the combination office and apartment building upon his death.

6. SPECIFIC PERFORMANCE—CONTRACT TO LEAVE PROPERTY BY WILL—ATTEMPTED HOLOGRAPHIC WILL—EVIDENCE.

Evidence that deceased physician, during last illness had attempted ineffectively to make a holographic will leaving all of his property in equal shares to his children and that plaintiff, a registered nurse, had written a part of it *held*, not to have overcome evidence that the doctor, for a valuable consideration, had agreed to leave her certain property then used for offices and apartments, of which agreement plaintiff sought specific performance; especially in view of plaintiff's inability to testify as to matters equally within knowledge of deceased (CL 1948, §§ 617.65, 702.5).

7. SAME—CONTRACT TO LEAVE PROPERTY BY WILL—IDENTIFICATION.

Deceased doctor's repetition of promise to leave plaintiff nurse a property that he was using for offices and apartments for period of some 2 years immediately prior to his death, following sale of premises he had occupied for similar purposes for about 10 years theretofore and during both of which periods plaintiff had worked for him at substantially less cash salary than others with similar training and experience *held*, to have definitely embraced the property used in later period in agreement sought to be specifically enforced.

8. SAME—CONTRACT TO LEAVE PROPERTY BY WILL—PAYMENT OF MORTGAGE—EVIDENCE.

Plaintiff nurse *held*, entitled to interest of deceased doctor in offices and apartment property without payment of the mortgage against the property at his death in view of lack of testimony regarding payment of the mortgage presented in suit for specific performance of doctor's agreement to leave her the property by a will.

9. COSTS—CROSS APPEAL.

No costs are allowed plaintiff upon affirmance of decree in her favor, where she did not prevail on cross appeal.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 10, 1953. (Docket No. 25, Calendar No. 45,840.) Decided October 5, 1953.

Bill by Frances Coull against Lloyd Piatt, executor of the will of Hewitt Smith, deceased, and others for specific performance of an alleged agreement by deceased to leave property to plaintiff. Decree for plaintiff. Defendants appeal. Plaintiff cross-appeals. Affirmed.

*Pierce, Planck & Ramsey,* for plaintiff.

*Michael Carland,* for defendant Piatt.

*Ballard, Jennings, Fraser & Parsons,* for defendants Swarthout and Smith.

BUTZEL, J. Frances Coull, plaintiff, brought suit against Lloyd Piatt, executor of the will of Dr. Hewitt Smith, and Jean Swarthout, Ethan Smith and Royce Smith, children and heirs-at-law of decedent, defendants herein, praying that she be decreed to be the owner of certain property located in the city of Lansing, Michigan, which belonged to Dr. Smith at the time of his death. Plaintiff, a registered nurse, had been in the employ of Dr. Smith continuously from some time in 1929 up to the time of his death in 1950. She alleges that she was originally employed as an office nurse, but by 1940 her duties had been so enlarged that as well as performing the duties of office nurse she looked after the office constantly even after hours and frequently on Sundays; that she also kept all of the doctor's books and records, managed his property for him, collected rents, looked after the making of all repairs to his properties and paid the insurance and taxes thereon. At times she even bought clothes for the doctor and articles for his children. The doctor was divorced. Plaintiff also kept house for him. Plaintiff and her husband occupied an apartment in the 2 buildings successively owned by the doctor and the doctor occupied one of

the rooms in plaintiff's apartment and took meals furnished by her. There is testimony to the effect that plaintiff paid no rent for the apartment and that the doctor did not pay for his room and meals. It is quite evident that plaintiff, by living in the same building in which the doctor had his office, was able to do more efficient work. She even furnished medicines to the doctor's patients when he was absent. Testimony shows beyond question that her services were almost invaluable. In all these years she took but 2 short vacations, one for 2 weeks and the other for 4 or 5 days. She was constantly looking after the doctor's personal as well as professional interests. The doctor first owned a piece of property at 428 West Michigan avenue, Lansing, Michigan, where he had his professional offices and apartment. Plaintiff received a comparatively small salary, far below the standard rate of pay, but did much more work than an office nurse would ordinarily be required to do. She claims that in 1940, at the time she demanded an increase in salary in keeping with her duties and services, he told her that if she would continue without such increase he would, at his death, leave her the property at 428 West Michigan avenue in Lansing; that in consideration of this promise she continued in his employ until his death and while her salary was increased but slightly from time to time it always remained greatly disproportionate to the value of her services or the standard of pay which nurses received; further, that subsequent to their agreement the property located on West Michigan avenue was condemned by the State of Michigan and that, thereafter, in 1948–1949, Dr. Smith had a building constructed for himself at 2808 North East street, in Lansing, Michigan, the new building containing professional offices for Dr. Smith and other doctors to whom he leased space. It also had 5 residential apartments, 1 of which was occupied by the

plaintiff and her husband and the doctor. She further claimed that she continued to perform the same services in the new building as she had in the old one, and that it was agreed between Dr. Smith and herself that he would leave her the new building, the old one having been taken by the State; and that when the doctor died he had failed to will to her the new property and building they were occupying.

Although unable, because of the provisions of CL 1948, § 617.65 (Stat Ann § 27.914), to testify herself, plaintiff introduced the testimony of her husband and a large number of disinterested persons, some of them business associates of the doctor, and all of the highest character, in order to prove the agreement and performance on her own part. Among the witnesses were a detective-lieutenant with the Lansing police force, a receptionist who had worked for Dr. Smith, as well as other doctors in the old building, a farmer who lived near a farm owned by Dr. Smith, 3 doctors who had rented office space from Dr. Smith, and 1 of the office nurses. All of them testified either to the unusual and extraordinary duties performed by plaintiff for Dr. Smith, the inadequate and low salary he had paid her, or to statements he had made at various times to the effect that upon his death plaintiff would own the building. Some of the witnesses testified to more than 1 of the points indicated. One testified that she had overheard a conversation between the doctor and the plaintiff and that when plaintiff asked when he would give her a raise in pay the doctor told her that she was already the highest priced nurse in Lansing, inasmuch as she would receive the building upon his death. It is true that it requires more than an expression of intent to make a will in order to entitle the beneficiary to specific performance, but in this case there was positive testimony of an agreement by the doctor to turn the property over to her and

of adequate consideration passing to the doctor. It would be a constructive fraud upon plaintiff were the agreement not fulfilled. There is more than mere intent shown in the testimony of some of the witnesses. One witness testified as follows:

"Well, just about 2 or 3 weeks before that Doctor Welsh's nurse and Doctor Huggett's nurse, both of them, got a raise, and we was all in the office talking and Mrs. Coull said to Doctor Smith, she says 'I think it is about time I was getting a raise,' and he just laughed and shrugged his shoulders and said, 'Well,' he said, 'after all, you are the highest, considered the highest paid nurse in the city,' and I said, 'Well, how come?' and he said, 'Well, after all she will get this building when I am gone.'"

Further testimony by the same witness is as follows:

"Q. One thing I didn't ask you, Mrs. Haviland; you referred to a Thursday afternoon in 1941 when you and the Doctor and Mrs. Coull were there cleaning and you gave us the conversation on that occasion; did Doctor Smith, in your presence, ever say anything similar to what he said that day with respect to the building?

"A. Well, it was said a lot of times but I couldn't give you any date. He said it so often I couldn't give you any more date than that."

Another witness testified that he was at the apartment with Dr. Smith and plaintiff when some question arose in regard to some material in regard to window fittings or drapes, and the doctor said:

" 'Well, you better find out if they will be satisfactory because this will be your headache when I am gone.'

"The Court: I didn't hear your answer.

"A. 'This building will be yours when I am gone.' One night we had a party down to the Coull's on

West Michigan avenue, and we were quite late, I believe it was around midnight, and Mrs. Coull appeared to be quite tired and she told the rest of us that she was going to bed, that she was tired, and the Doc spoke up and said, 'Just bear with us a little longer, Mrs. Coull, some day this building will be yours and you can take it a little easier.' "

Another witness testified:

"The subject came up of the labor situation and the costs of labor, and I said that I had employed several people and the labor costs were running away with the profits, and I said, 'How are you doing, Doc?' and he said, 'Well, I have had Mrs. Coull a long time and I haven't given her any raises, but she will be taken care of later on.' "

Various witnesses testified as follows:

"Doctor Smith and Dr. Bevez sometimes played cribbage there during the lunch hour. I would sit there and kibitz. They were talking about how much I was getting and how much Mrs. Coull was getting and I made the remark that I didn't think for all the years and experience that Mrs. Coull had that she didn't get really enough. He said, 'Yes, Pat, I think that is true,' when I made that statement. Doctor Smith told Doctor Bevez and I overheard it as I was sitting there, that Mrs. Coull didn't have to worry, eventually the building would be hers.

"Q. Was that on the same occasion that he agreed with you that her compensation was much less than it should be?

"A. That is correct."

"It was '44 or '45, and we discussed the fact that I believe he was paying $100 a month. I made the remark that I was paying my girl about 225 and he told me at that time, and he said, 'Well, of course I am furnishing her an apartment, but I intend to leave her this building as an income,' and he said, 'she will be well taken care of because she done a lot for me all these years.' "

" 'She will be well taken care of, this is going to be hers.' He did not indicate in any way what he meant by this. That took place right in his office at 2808 North East street."

" 'Of course I have the welfare of Mrs. Coull in mind; this (*the building*) will be good income property for her if anything should happen to me.' "

" 'You know, Red, this is quite an investment; it is going to be good income.' * * * 'Well, I am going to keep it as long as I live and after I die that goes to Mrs. Coull.' "

" 'When I retire I am going to give this to Mrs. Coull as an income.' "

We believe there is sufficient testimony to show not only the consideration but also the agreement.

Upon the doctor's death, plaintiff filed a claim against his estate for 4 months' salary at $200 a month and an additional claim for $200 for 10 days' services as a registered nurse for the care of the doctor the last days of his illness at the hospital. The claim was allowed and paid. The instant suit was begun after the claim was filed. Defendants claim that there was an election of remedies and that plaintiff was precluded from filing this claim for specific performance; that she might have included a sum for extra services in the claim she filed in the probate court. While it is true that one cannot split a cause of action and bring different suits for different parts of his claim, this is not a hard and fast rule where complete remedy could not be obtained in each suit. Plaintiff was entitled to be paid in cash for her monthly stipend and she was also entitled to specific performance of the contract to be made the owner of the property at the doctor's death. The latter could only be accomplished by the present suit. Under certain circumstances the bringing of the two causes of action is permitted. In *LaBour*

v. *Michigan National Bank*, 335 Mich 298, the Court said:

"The rule against splitting a cause of action is not a hard and fast one in courts of equity, and will not be enforced there unless justice requires its application in the particular case."

Defendants make the point that plaintiff was present when during the decedent's last days he attempted to make a holographic will, which was partly in the handwriting of decedent and partly in that of plaintiff. He attempted to leave all his property in equal shares to the children. This will was not executed in accordance with statutory requirements[*] and therefore was not probated. Just why plaintiff did not remonstrate at the time, or insist upon the North East street property being left to her could not be shown. We can only infer that the doctor was not able to write out the whole will on account of his fatal illness, or possibly plaintiff did not care to remonstrate with him on account of his physical condition, or even whether it would have been proper for plaintiff, as decedent's nurse and in a position of trust to have quarreled with him during his last illness when he may have been in a weakened condition. Plaintiff could not testify as to what actually took place.

The property in question is valued at $58,000 but subject to a mortgage of $17,422.45, for a net value of $40,577.55. The doctor's estate consisted also of two farms, some stock, tools, et cetera, and some insurance, all of which will go to his children. Testimony shows that the doctor repeated his promise after the West Michigan property was sold, stating that plaintiff would receive the North East street

---

[*] See CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178[75]).—Reporter.

property, so the testimony ties up the latter property into the agreement.

Plaintiff claims, on cross appeal, that the estate was bound to pay off the mortgage so that she would receive the property free and clear from all encumbrances. Nothing whatever was said at any time in regard to the mortgage on the property and we cannot, therefore, infer any agreement in that regard. There was no testimony regarding the payment of the mortgage. The judge in holding in plaintiff's favor in general held that she was to receive whatever interest the doctor had in the property and not more. We concur in that determination. While we appreciate the fact that expressions of intent to do something and the alleged words of persons subsequently deceased must be looked upon with the greatest caution and be subject to the closest scrutiny, *Wild* v. *Wild,* 266 Mich 570, we believe that plaintiff established her contract. Her witnesses were all high-grade, reputable people; the judge had the benefit of hearing their testimony and of judging their credibility. He concluded that plaintiff was entitled to the relief prayed for and he decreed that she was entitled to the property. Upon careful examination of the record we conclude that the judge was correct.

The decree for plaintiff is affirmed, but without costs as she did not prevail as cross-appellant.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.